UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:09-CV-00061**

**KEISHA N. NILES and WILLIAM**                                                  **PLAINTIFFS**
**CHRISTOPHER NILES, Personal**
**Representatives of the Estate of D.C.N.;**
**and KEISHA N. NILES and WILLIAM**
**CHRISTOPHER NILES in their Individual**
**Capacities as Parents of D.C.N.,**

**v.**

**OWENSBORO MEDICAL HEALTH**                                                  **DEFENDANTS**
**SYSTEM, INC.; EMERGENCY PHYSICIANS**
**GROUP, P.S.C.; RADIOLOGY IMAGING**
**CONSULTANTS, S.C.; LOUISVILLE**
**RADIOLOGY IMAGING CONSULTANTS,**
**PLLC; OWENSBORO PEDIATRICS, PLLC;**
**THE WOMEN'S PAVILION, P.S.C.;**
**MICHAEL F. YEISER, MD; JOHN D.**
**LAUZON, MD; CHARLES F. HOBELMANN,**
**III, MD; MARIA E. SMITH, MD; and PAUL**
**R. ROSEL, MD.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for partial summary judgment [DN 60] by Defendant Owensboro Medical Health Systems, Inc. ("OMHS"). Fully briefed, the matters are ripe for decision. For the reasons that follow, the motion is granted.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine

issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. FACTUAL BACKGROUND

This case arises out of the death of D.C.N., a 27 day old infant. On August 17, 2008, D.C.N. was taken to the emergency room at OMHS and treated by Dr. Hobelmann, an emergency room physician. Dr. Hobelmann ordered three X-rays which were viewed by both Dr. Hobelmann and Dr. Rosel, a radiologist. Dr. Rosel viewed the images electronically from a Chicago hospital and claims that only two of the three films were received. OMHS insists that all the films were sent. The "missing" third x-ray contained an image of D.C.N.'s enlarged heart which went undiagnosed. D.C.N. later died from complications related to the heart problem and Plaintiffs filed this action seeking damages for personal injury and wrongful death.

## III. DISCUSSION

Plaintiffs allege that Defendant OMHS is liable not only for its own negligence, but also for the negligence of Drs. Hobelmann and Rosel as agents of the hospital. Defendants claim that the doctors were merely independent contractors and therefore OMHS can not be vicariously liable for the doctors' alleged negligence.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." McAlister v. Whitford, 365 S.W.2d 317, 319 (Ky. 1962). "A principal is vicariously liable for damages caused by tort of commission or omission of an agent or subagent, other than an independent contractor, acting on behalf of and pursuant to the authority of the principal." Williams v. Ky. Dept. of Ed., 113 S.W.3d 145, 151-52 (Ky. 2003). Said differently, "[a]s a general rule, an employer is not liable for the torts of an independent contractor in the performance of his job." Miles Farm Supply v. Ellis, 878 S.W.2d 803, 804 (Ky. Ct. App. 1994).

Thus, the issue here is whether Drs. Hobelmann and Rosel were acting as agents or mere independent contractors of OMHS. "'Agency is a legal conclusion to be reached only after analyzing the relevant facts . . . .'" CSX Transp., Inc. v. First Nat. Bank of Grayson, 14 S.W.3d 563, 566 (Ky. Ct. App. 1999) (quoting Thomas v. Hodge, 897 F. Supp. 980, 982 (W.D. Ky. 1995)). "Where the facts are in dispute and the evidence is contradictory or conflicting, the question of agency, like other questions of fact, is to be determined by a jury. However, where the facts are undisputed, the question becomes one of law for the court." Wolford v. Scott Nickels Bus Co., 257 S.W.2d 594, 595 (Ky. 1953). Plaintiffs have advanced two theories in support of their agency claim: (1) actual authority; and (2) ostensible authority. Because the facts surrounding the relationship here

3

are undisputed, the Court will decide in turn whether either grounds establish an agency relationship.

**A. Actual Authority**

Plaintiffs first argue that the contract between OMHS and Drs. Hobelmann and Rosel established an actual agency relationship. Actual agency is created if "'there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act.'" Laurel Creek Health Care Ctr. v. Bishop, 2010 WL 985299, at *2 (Ky. Ct. App. March 19, 2010) (quoting Terbovitz v. Fiscal Court of Adair Cnty., Ky., 825 F.2d 111, 116 (6th Cir. 1987) (overruled on other grounds)). Kentucky employs the following "matters of fact" to determine whether a party is an actual agent or an independent contractor:

> '(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.'

Kentucky Unemp't Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc., 91 S.W.3d 575, 579 (Ky. 2002) (quoting Restatement (Second) of Agency § 220(2) (1958)). "[N]ot one of the aforementioned factors is determinative, and every case, where it must be determined whether an individual is an employee or an independent contractor for unemployment insurance purposes, needs

4

to be resolved on its own facts." Landmark, 91 S.W.3d 575, 580.

An examination of the factors weigh in favor of a determination that both doctors were acting as independent contractors. First, the contract provided that OMHS would not exercise any control over Dr. Hobelmann's and Dr. Rosel's work other than enforcing the hospital's general regulations and requiring its physicians to maintain credited status. OMHS did not prescribe particular diagnosis or treatment strategies; the doctors were free to use their own judgment and specialized training in providing the emergency room services. Second, although OMHS provided the facility, they exercised little supervision over the doctors working within their walls.[1] Third, the Court also agrees with Defendants that OMHS and Drs. Hobelmann and Rosel, although operating under one roof, performed distinct operations. Where Drs. Hobelmann and Rosel were focused on diagnosing and treating medical ailments, OMHS's operation was focused on providing in-patient care and maintaining the bricks and mortar. Further, the two parties billed separately and the physician fees were not set by OMHS, but were derived from the prevailing fees in the community for similar services. Fourth, the parties believed they were creating an independent contractor relationship evidenced by the language of the contracts which specifically stated that both doctors would be working at OMHS as independent contractors. Although in Dr. Rosel's case the contract was renewable indefinitely[2], and OMHS provided Drs. Hobelmann and Robel with the instrumentalities, tools and place of work, these factors alone are not enough to defeat the overwhelming evidence supporting an independent contractor relationship. Accordingly, Drs. Hobelmann and Rosel were

---

[1] Dr. Rosel did not work at the OMHS location and therefore was subject to no supervision. The medical director that supervised Dr. Hobelmann, although approved by OMHS, was actually chosen by the Emergency Physicians Group.

[2] The Court rejects Plaintiffs' argument that Dr. Hobelmann was employed indefinitely. The contract clearly terminated following a maximum of 4 years of service.

not actual agents of OMHS.

**B. Ostensible Authority**

Next, Plaintiffs assert that even if no "actual agency" relationship was created under the Agreement, OMHS is vicariously liable for the actions of Drs. Hobelmann and Rosel under an "ostensible agency theory." "An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." Paintsville Hosp. Co. v. Rose, 683 S.W.2d 255, 257 (Ky. 1985) (quotation omitted). Kentucky case law is clear that ostensible authority is not available when the patient "knew or should have known that the treating physician was not a hospital employee when the treatment was performed." Id. at 256. Therefore, "an attempt by a hospital to disclaim an agency relationship and to notify the public (by means of the very kind of form signed by [plaintiff]) suffices to defeat apparent or ostensible agency." Shofner v. Baptist Healthcare Affiliates, Inc., 2003 WL 22025906, at *5 (Ky. Ct. App. Aug. 29, 2003). See Grubb v. Norton Hosps., Inc., 2010 WL 2787982, at *6 (Ky. Ct. App. July 16, 2010) ("The general premise in Kentucky is that hospitals are not vicariously liable for doctors who are not its employees so long the hospital does not represent to its patients that the doctors are its employees.").

"Absent notice to the contrary, a person has a right to assume that treatment received at a hospital emergency room open to the public is being rendered through hospital employees and that any negligence associated with that treatment will render the hospital responsible." Vandevelde v. Poppens, 552 F. Supp. 2d 662, 666 (W.D. Ky. 2008) (citing Paintsville, 683 S.W.2d at 258). However, here the record is clear that Ms. Niles signed a consent from informing her that neither

6

Dr. Hobelmann or Dr. Rosel were employees of OMHS. (Defs.' Mot. Summ. J. Ex. 1.) The consent form clearly disclaimed any agency relationship and put Ms. Niles on notice that the physicians were in fact independent contractors. See Grubb, 2010 WL 2787982 at *6 (ostensible authority argument failed because "the record reflects that [plaintiff] signed, on three separate occasions, consent forms provided by Norton Hospital which informed her that she may receive the services of physicians, groups of physicians or other practitioners (such as nurses and physician assistants) who are not employees of the hospital.") (quotation omitted); Floyd v. Humana of Virginia, Inc., 787 S.W.2d 267, 269-70 (Ky. Ct. App. 1989) (ostensible agency theory denied where admission forms read and signed by plaintiff indicated her knowledge that doctors were independent contractors and not agents of hospital, and no representation or action was made so as to induce plaintiff to believe that doctors were employees or agents of hospital); Vandevelde, 552 F. Supp. 2d at 667. (Ostensible authority argument rejected because "the fact that [plaintiff] did not read the Consent Upon Admission form is not dispositive. . . . In providing the Consent Upon Admission forms to patients receiving treatment, [the hospital] has clearly attempted to alert the public that its physicians were not employees or agents of the hospital."). Accordingly, as a matter of law, OMHS is not vicariously liable for the alleged negligence of the physicians.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment [DN 60] is **GRANTED**.

cc. Counsel of Record