# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

CIVIL ACTION NO. 4:09-CV-00061-JHM

KEISHA N. NILES, et al.                                              PLAINTIFFS

V.

OWENSBORO MEDICAL HEALTH
SYSTEM, INC, et. al.                                                 DEFENDANTS

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendants Maria Smith and the Women's Pavilion's Motion in Limine [DN 189]. Fully briefed, this matter is ripe for decision.

## I. DISCUSSION

### 1. Medical testimony in terms of possibility rather than probability

Defendants Maria Smith and the Women's Pavilion ("Defendants") have moved to preclude any testimony by Plaintiffs' experts that addresses causation in terms of possibility. In a medical malpractice action under Kentucky law, proof of causation must be in terms of probability rather than mere possibility. <u>Baylis v. Lourdes Hosp., Inc.</u>, 805 S.W.2d 122, 124 (Ky. 1991).

Defendants cite an excerpt from Plaintiffs' expert Dr. Edwin Campbell, M.D., where in he responds to a line of questioning discussing echocardiograms ("echo") and states that he cannot say within a reasonable degree of medical probability that a referral and an echo would have discovered D.C.N.'s heart defects. Campbell Dep. 48:2-14. However, upon further reading, Dr. Campbell clarifies those remarks and says that there is no guarantee that an echo would have discovered the defects 100% of the time. <u>Id.</u> at 48:21-25. He then states that such a referral and echo would have discovered the defects more than 50% of the time. The full reading of this deposition excerpt demonstrates that Dr. Campbell is testifying that an echo would have probably discovered the

cardiac defects at issue.  Furthermore, Plaintiffs respond by citing the testimony of another of their experts, Dr. Roger Lenke, M.D., who testified that he believed, within a reasonable degree of medical probability, that had Defendant Smith referred Plaintiffs to a specialist that D.C.N.'s cardiac defects would have been detected.

While the Court agrees that causation must be shown in terms of probability, and not mere possibility, the Court finds that Plaintiffs have produced expert testimony that intends to show just that.  Therefore, the Defendants' motion on this issue is **DENIED**.

**2. Evidence regarding the presence of liability insurance**

Defendants have moved to prohibit the introduction of evidence regarding the presence of liability insurance pursuant to F.R.E. 411.  This motion is **GRANTED**.  Plaintiffs do not object to this motion.

**3.  Admission of expert reports into evidence**

Defendants have moved to prohibit the admission of expert reports into evidence as inadmissible hearsay under F.R.E 801 and 802.  This motion is **GRANTED**.  Plaintiffs do not object to this motion.

**4. Financial condition of any party**

Defendants have moved to prohibit the admission of testimony, evidence, or arguments regarding the financial condition of any of the parties pursuant to <u>Hardway Mgmt. Co. v. Southerland</u>, 977 S.W.2d 910 (Ky. 1998).  This motion is **GRANTED**. Plaintiffs do not object to this motion.

**5. Standard of care opinions or criticisms from non-disclosed witnesses or parties**

Defendants have moved to prohibit any witness who has not been disclosed as an expert,

including other past and present Defendants, from testifying regarding standard of care opinions or criticisms.  This motion is **GRANTED**.  Plaintiffs do not object to this motion.

**6. Informed consent based upon personal and subjective expectations**

Defendants have moved to prohibit the introduction of any testimony regarding informed consent that is based upon the personal or subjective expectations of the witness.  Defendants contend that none of Plaintiffs' witnesses have testified to anything other than his own preference regarding what informed consent should include.[1]  Defendants claim that allowing an individual to discuss the level of informed consent that he would desire is irrelevant, will confuse the jury, and will prejudice the Defendants.  Defendants appear to be moving under F.R.E. 401, 402, and 403 for the exclusion of such testimony.

The Court finds that Plaintiffs have produced relevant testimony regarding the standard of care for informed consent.  Dr. Lenke's deposition discusses in depth what informed consent should contain and how Defendant Smith's informed consent fell below the standard of care.  Lenke Dep. 83:4-89-5; see also Campbell Dep. 23:3-24:11, 28:14-24 (discussing the deficiencies of Defendant Smith's informed consent).  Furthermore, to the extent that the experts discuss what they consider necessary to satisfy the requirements of informed consent, the Court finds such testimony relevant and admissible.  Under K.R.S. § 304.40-320(1), whether the informed consent given to the patient "was in accordance with the accepted standard of medical . . . practice among members of the profession with similar training and experience" is a consideration to be taken into account when

---

[1] As evidence of such inadmissible testimony, Defendants cite the testimony of Plaintiffs' expert, Dr. Robert Chabon, M.D., where he states that he would have wanted a referral, and that the Plaintiffs should have received the same standard of care.  The Court notes that it does not appear that Dr. Chabon is relevant to this case any longer or will be called to testify.

examining informed consent.  These experts are members of the profession with similar training and experience and the manner in which they give informed consent will assist the jury in determining if Defendant Smith's informed consent was in accordance with the accepted standard.  Therefore, the Defendants' motion on this issue is **DENIED**.

**7. Evidence of Defendant Smith's oral board examination**

Defendants have moved to prohibit the introduction of evidence concerning the fact that Defendant Smith failed the oral portion of her board examination the first time she took it in 2004. Defendants contend that this fact is irrelevant under F.R.E. 401 because it is of no consequence to the determination of whether Defendant Smith acted as a reasonably prudent obstetrician would have acted in treating Plaintiff under the same or similar circumstances.

Plaintiffs contend that Defendant Smith's educational history is highly relevant because she was disclosed as an expert under Defendants' Fed. R. Civ. P. 26(a)(2) disclosures.  Plaintiffs contend that the jury should be left to judge the credibility of experts, which will require the jury to consider Defendant Smith's educational history.

Defendant Smith's likely testimony will concern the treatment and actions taken by her in regards to Plaintiff's pregnancy.  While the Court is not sure what exactly will be covered in her testimony, the likely content does not appear to be that of a true F.R.E. 702 expert, but rather that of a treating physician, which will necessarily include explanations of actions taken or not taken in the case.  To the extent that Defendant Smith's testimony at trial concerns only her treatment of Plaintiff, the Court finds that the fact that she failed the oral board examination is irrelevant and inadmissible.  At the time that treatment was rendered, there is no question that Defendant Smith was board certified.

However, the qualifications of a witness attempting to give expert testimony under F.R.E. 702 are relevant. In the event that Defendant Smith holds herself out as an expert under F.R.E. 702 and testifies as such, the Court finds that Defendants will have opened the door for Plaintiffs to question her qualifications, including her first failed attempt to pass the oral board examination. Therefore, Defendants' motion on this issue is **RESERVED** for trial.

**8. Testimony regarding the standard of care for ultrasound technician certification**

Defendants have moved to prohibit any testimony that the standard of care for the Women's Pavilion requires that their ultrasound technicians be certified in ultrasound. Plaintiffs' experts concede that the standard of care does not require that ultrasound technicians be certified in ultrasound. The Court finds that there is no evidence that the standard of care requires that the ultrasound technicians be certified in ultrasound, therefore, Plaintiffs' should not be permitted to argue that failure to use ultrasound certified technicians violated the standard of care for hospitals. Defendants' motion on this issue is **GRANTED**. However, as Plaintiffs have argued, the fact that the technicians were not certified is relevant to the question of whether a referral should have been made.

**9. Testimony that the standard of care required a referral for an echocardiogram**

Defendants have moved to prohibit any testimony that the standard of care required that Defendant Smith refer Plaintiff Niles for an echo. This motion is **GRANTED**. Plaintiffs' do not object to this motion.

**10. Testimony that failures on Defendant Smith's part more likely than not caused the death of D.C.N.**

Defendants have moved to prohibit any testimony that Defendant Smith's failures more likely than not caused the death of D.C.N. In support of this motion, Defendants cite Plaintiffs'

expert, Pediatric Cardiothoracic Surgery Expert, Dr. Simon Abraham, M.D., who stated that he was not going to discuss Defendant Smith's treatment and whether it fell below the standard of care. Abraham Dep. 57, 132-33. Plaintiffs' respond by stating that it would be improper for Dr. Abraham to testify regarding the standard of care for obstetricians because he is not an obstetrician, but is instead a surgeon. Plaintiffs' contend that expert testimony has been elicited that Defendant Smith's failure to refer Plaintiffs to a specialist fell below the standard of care and that had a referral occurred, that the defect would probably have been discovered. Furthermore, other of Plaintiffs' experts have testified that had the defect been discovered, that there was a high probability that the infant could have been saved through surgery.

While one expert alone may not be able to testify that Defendant Smith's failures more likely than not caused the death of D.C.N., Plaintiffs have secured multiple experts who are qualified to tie together the separate inferences that produce such a conclusion. The Court finds that expert testimony has been elicited that when viewed together would allow the jury to find that Defendant Smith's failures more likely than not caused the death of D.C.N. Therefore, Defendants' motion on this issue is **DENIED**.

## 11. Testimony that an echocardiogram would have diagnosed D.C.N.'s cardiac defects

Defendants contend that Plaintiffs' experts, Dr. Abraham and Dr. Campbell, have both given testimony at their depositions that an echo would not have diagnosed D.C.N.'s cardiac defects. Defendants argue that they should not be permitted to testify otherwise at trial. Plaintiffs' did not object to this motion. To the extent that the motion seeks an order that these experts be precluded from expressing any opinions not previously disclosed the Defendants' motion is **GRANTED**.

## 12. Independent criticisms of Defendant Women's Pavilion

Defendants have moved to prohibit any witness from offering criticisms of Defendant Women's Pavilion as an entity or of its employees other than in respect to Defendant Smith's conduct. This motion is **GRANTED**. Plaintiffs' did not object to this motion.

## II. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants Maria Smith and the Women's Pavilion's Motion in Limine [DN 189] is **GRANTED IN PART**, **DENIED IN PART**, and **RESERVED IN PART**.

It is **GRANTED** as to paragraphs 2, 3, 4, 5, 8, 9, 11, and 12.

It is **DENIED** as to paragraphs 1, 6, and 10.

It is **RESERVED** as to paragraph 7.

cc: counsel of record